Welles, J.
 

 The bond and mortgage in question were
 

 assigned to the comptroller, on the 5th day of September 1844, by Elisha Crawford, the mortgagee, who was then the president *of the White Plains Bank; ., ^ the object of which assignment, as therein de- *- dared, being to secure the redemption of the circulating notes of said bank. The evidence then shows, that upon receiving the bond and mortgage so assigned, and a written admission by Cook, the mortgagor, of his indebtedness to the mortgagee in the amount to secure which the bond and mortgage were executed, and of his
 
 *541
 
 having received notice of the assignment, the comptroller issued and delivered to Crawford, circulating notes to be issued and put in circulation by the bank, to the amount secured by the bond and mortgage.
 

 On the 18th day of July 1846, Crawford delivered to the comptroller, circulating notes of the bank, to an amount equal to that secured by the bond and mortgage, and received from him a re-assignment thereof. The notes so delivered to the comptroller were the property of the plaintiff, and had been received by Crawford from him, who procured the re-assignment for the use and benefit, and at the request, of the plaintiff; and he immediately re-delivered the bond and mortgage to the plaintiff. These are all the facts in the case which go to show the plaintiff’s right to the bond and mortgage; and the question to be first determined, is, whether they are sufficient to constitute him the owner of them in law or equity.
 

 The 5th section of the act, called the general banking law, passed 13th April 1838 (Laws of 1838, c, 260), authorizes the comptroller, among other things, to re-transfer mortgages which have been transferred to him by individual bankers or associations under the act, as security for the redemption of circulating notes, to such persons or associations, upon receiving and cancelling an equal amount of such circulating notes, &c. The 9th section of the act authorizes the comptroller to re-assign such bonds and mortgages to the person or association who transferred the same, on receiving other approved bonds and mortgages of equal amount. The 11th section provides that the comptroller may sell such bonds and mortgages at public auction, in case of failure or refusal by such person or association to pay such circulating notes, on demand, in the manner specified in the 4th section.
 

 *These are all the provisions of the act which -* give the comptroller authority to re-assign or
 
 *542
 
 re-transfer, or in any manner to sell or dispose of mortgages assigned or transferred to him as security for the redemption of circulating notes, under the act. The act nowhere authorizes him to transfer or assign bonds and mortgages pledged with him as such security, otherwise than to the person or association by whom they were transferred, excepting in the case of failure to redeem the notes, by the persons or associations who issued them. Could the plaintiff have acquired a valid title to the bond and mortgage in question, by procuring from the comptroller an assignment thereof directly to himself? That he could not, it seems to me perfectly plain. It wuuld have been an act on the part of the comptroller, utterly destitute of authority, and a plain violation, not only of the letter, but of the spirit, of the law. To allow it, wotild not only be placing the banks at the mercy of individuals, but might do great injury to mortgagors.
 

 If the plaintiff could not thus purchase the bond and mortgage directly, it is equally clear, that he could not, as it is evident, he has attempted in this case, do it indirectly. It is not pretended, that there has been a sale of these securities by the bank to the plaintiff, since the re-assignment thereof by the comptroller, the only effect of which was to vest the title to them, discharged of the comptroller’s lien, in the bank, and placing them in the same condition they were in, before the transfer of them to the comptroller. All that has been done which tends to show a sale to the plaintiff, has been the handing the papers over to him by Crawford. This cannot be regarded as a sale by the bank to the plaintiff, admitting Crawford had authority from the bank to make such sale,' which the case utterly falls of establishing. It was not done, with that intent, but merely for the purpose of carrying out and completing, by Crawford, as the plaintiff’s agent, the purchase of the bond and mortgage, of the comptroller, for the plaintiff, in pursuance of the previous arrangement between them; which, it has been shown, could not be legally done.
 

 The foregoing view puts an end to the plaintiff’s * 543 1 c^a™’ an<^ disposes his right to any relief -1 whatever; a consideration of the other questions raised is, therefore, unnecessary. The judgment of the supreme court should be reversed, and the plaintiff’s bill should be dismissed, with
 
 costs;
 
 and the defendants should have costs of the appeal.
 

 Decree reversed, and bill dismissed, with costs.
 
 [1]
 

 [1]
 

 After this decision, the plaintiff procured an assignment of the bond and mortgage from Crawford and from the bank, and brought another suit for the foreclosure of the same, in which he succeeded; the supreme court holding that the former decree was no bar, as Mitchell failed upon his title to the subject in controversy, and not upon the merits. They say, the decree was reversed upon the sole grourd, that Mitchell was not the assignee, and could not maintain his suit in that character. 29 Barb. 243, 253.